<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| REUEL MEBUIN, | : | |
| Plaintiff, | : | Civil Action No. 12-7220 (DMC) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| REUEL MEBUIN, | : | |
| Plaintiff, | : | Civil Action No. 13-0446 (DMC) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

Reuel Mebuin
Essex County Jail
354 Doremus Avenue
Newark, NJ 07105
    Plaintiff <u>pro</u> <u>se</u>

**CAVANAUGH,** District Judge

Plaintiff Reuel Mebuin, an alien detainee confined at Essex County Jail in Newark, New

Jersey, in connection with removal proceedings, seeks to bring an action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.[1]

## I. BACKGROUND

Plaintiff opened the first of three related civil actions to this Court by the submission of a complaint [1], dated October 23, 2012, and amended complaint[3],[2] also dated October 23, 2012, containing various claims challenging the conditions of confinement and provision of medical care at Essex County Jail. The first complaint and amended complaint were docketed at Mebuin v. United States, Civil Action No. 12-7220 (D.N.J.). On January 14, 2013, Plaintiff submitted a separate complaint docketed at Mebuin v. United States, Civil Action No. 13-0443 (D.N.J.), in which he reasserted in more detail, and against more defendants, some of the claims previously asserted in the complaint and amended complaint in Civil Action No. 12-7220.[3] As it is questionable whether all of these claims were properly joined in one action, see Fed.R.Civ.P. 18,

---

[1] Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and will order the Clerk of the Court to file the Complaint.

[2] The complaint and amended complaint in Civil Action No. 12-7220 are identical except for the captions. In the initial complaint, the caption identified the United States of America as the sole defendant, although other defendants were identified in the text of the complaint and the United States is not described as a defendant in the text. In the amended complaint, the caption eliminates the United States as a named defendant and instead names all of the defendants described in the text.

[3] More specifically, in Civil Action No. 13-0443, Plaintiff asserts due process, equal protection, and cruel and unusual punishment claims against the United States of America, Secretary of Homeland Security Janet Napolitano, Department of Homeland Security New Jersey Field Director John Tsoukaris, Warden Roy L. Hendricks, and Officers Alvarez, Raimato, and John Doe, arising out of allegedly sexually offensive and frightening graffiti in his cell, an incident in which a correctional officer shoved him during a fire drill, and verbal harassment and obscene gestures by other correctional officers. Those same claims are asserted here, in Civil Action No. 12-7220, against a subset of the same defendants, as Count B (Sexual Harassment), Count E (Staff Misconduct and/or Abuse), and Count F (Frightening and Scary Images).

2

20, 21, this Court will address separately, in Civil Action No. 13-0443, the claims asserted there, and will dismiss those claims from this action as duplicative.[4] Also on January 14, 2013, Plaintiff submitted a third complaint, docketed at <u>Mebuin v. United States</u>, Civil Action No. 13-0446 (D.N.J.), asserting against substantially the same defendants,[5] the same claims asserted in Civil Action No. 12-7220, except for those that were separately asserted in the complaint in Civil Action No. 13-0443. That is, the complaint in Civil Action No. 13-0446 asserts claims related to medical care and the adequacy of the food provided in the Essex County Jail.

Finally, on March 26, 2013, Plaintiff submitted in Civil Action No. 13-0443 a motion to amend, accompanied by a proposed amended complaint, asserting, against a larger group of defendants, the medical care and nourishment claims asserted in Civil Action No. 13-0446. As the motion to amend clearly was directed to the claims asserted in Civil Action No. 13-0446, this Court has entered an Order [8] in Civil Action No. 13-0443 to re-file the motion to amend, and attached proposed amended complaint, in Civil Action No. 13-0446. Further, this Court will grant that motion to amend and will direct the Clerk of the Court to file the attached proposed amended complaint as the Amended Complaint (referred to hereinafter as the "Amended Complaint" or "Am. Compl.") in Civil Action No. 13-0446. As the remaining claims in both Civil Action No. 12-7220 and Civil Action No. 13-0446 involve common questions of law and fact, this Court will order, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, that

---

[4] A plaintiff has no right to maintain two separate actions against the same defendants, involving the same subject matter, in the same court at the same time. <u>See</u> <u>Walton v. Eaton Corp.</u>, 563 F.2d 66, 70 (3d Cir. 1977), <u>cited in</u> <u>McKenna v. City of Philadelphia</u>, 304 F.App'x 89, 91 (3d Cir. 2008).

[5] In the complaint filed in Civil Action No. 13-0446, Plaintiff did not name as a defendant the Bureau of Immigration and Customs Enforcement, which was named as a defendant in Civil Action No. 12-7220.

these two actions be consolidated for all purposes under Civil Action No. 13-0446.[6]

At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.

Plaintiff is a citizen of Cameroon who was taken into custody by immigration authorities in March, 2012, and who is now confined at Essex County Jail in connection with removal proceedings. Plaintiff's primary concerns regard treatment of various medical conditions, both pre-existing conditions and ones sustained during his confinement. More specifically, with respect to pre-existing conditions, Plaintiff states that he has an undescribed "life threatening medical condition,"[7] for which he has been prescribed medication, not specified, and which requires routine monitoring (the schedule for which Plaintiff does not set forth) through some undescribed type of "blood work." (Amended Complaint at 9.) According to Plaintiff, defendant Dr. Brown admitted to Plaintiff within a few days of his arrest that staying off the medication for five days or more could cause grave consequences. Nevertheless, Plaintiff asserts that "Defendants" did not give him his medication on numerous occasions and kept him off his

_____

[6] More recently, Plaintiff has filed, in Civil Action No. 13-0446, a Motion [5] to reopen this matter and to file yet another amended complaint. The Motion will be denied. This matter has never been closed, so it does not need to be re-opened. In addition, the latest amended complaint seeks to reassert numerous claims asserted, and addressed by the Court, in Civil Action No. 13-0443, and which are being dismissed here as duplicative. Plaintiff is cautioned to attend to the correct docket number in making submissions to this Court.

[7] In the initial complaint in Civil Action No. 12-7220, Plaintiff began the description of his claim regarding his medical condition with the letters "HIV." He eliminated those letters from the Amended Complaint, which was filed several months later, and does not otherwise describe his illness.

4

medication for at least five consecutive days on several occasions. Plaintiff also states that his blood work is not performed on the "regular schedule" required by his condition. Plaintiff also complains that he has seen a specialist only once during his confinement. (Id., ¶ 14.) Also in connection with his "poor health condition and low immune system," Plaintiff alleges that he used "health shakes" before his confinement. While acknowledging that defendant Dr. Brown ordered health shakes almost immediately after Plaintiff entered Essex County Correctional Facility, Plaintiff states that he did not receive those health shakes until May, after he had lost approximately 15 pounds, and that he still fails to receive these shakes occasionally. Plaintiff states that he was told that use of the shakes was delayed because that had to be authorized "by Washington." (Am. Compl. ¶ 14, page 11.) Finally, Plaintiff also alleges that he suffers from sleep apnea, that he was prescribed a CPAP machine for proper breathing before his confinement, and that "Defendants" have refused to provide such a machine during his confinement or to permit him to bring his own machine from home. According to Plaintiff, Dr. Brown told him in January 2013 that if he had not died from lack of the CPAP machine by then, he would not die from lack of using it. Instead, "Defendants" have prescribed Tylenol and Motrin for his resulting headaches. Plaintiff contends that the sleep deprivation has caused him to develop high blood pressure and constant weakness and dizziness. That weakness and dizziness, Plaintiff claims, caused him to slip, hurting his right knee and ankle. (Am. Compl. ¶ 14, page 9-10.)

With respect to the high blood pressure allegedly sustained while confined, Plaintiff contends that he was previously advised by his personal physician that failure to use the machine as prescribed could lead to high blood pressure. Thus, he argues that the "Defendants'" refusal to provide a CPAP machine has caused this serious health condition. Moreover, Plaintiff alleges

5

that "Defendants" fail to give him appropriate high blood pressure medication on a regular basis. (Am. Compl. at 11.)  With respect to the injury to his right knee and ankle, Plaintiff alleges that he slipped in June 2012 but that X-rays were not taken till December.  Plaintiff states that defendant Dr. Paul O'Connor, who is alleged to be the orthopedic doctor at Essex County Correctional Facility, first refused to order an X-ray, then told Plaintiff that the X-ray showed nothing was wrong, because an X-ray will only reveal broken bones, then told Plaintiff that he suffers from Chomodromalacia Patel and that his right knee cap had shifted and that the right ankle was sprained.  Plaintiff claims that Dr. O'Connor recommended exercise for his knee cap problem, to strengthen the supporting muscle and to prevent the knee cap from shifting.  Plaintiff relates that Dr. O'Connor told him that this is the same treatment that he recommends for his private patients, but Plaintiff "is looking for alternative medical care."  (Am. Compl. ¶ 16, page 10-11.)  Finally, Plaintiff contends that the medical department prescribed a lower bunk for Plaintiff, but that "Defendants" have failed to follow this instruction, and, alternatively, that "Defendants" have ordered Plaintiff to give up the lower bunk.  (Am. Compl. at 10-11.)

In addition, Plaintiff contends that the food served does not meet the nutrition standards of the National Dietary Association and that the food is prepared in an unclean and unsafe environment, as purportedly evidence by the fact that on one occasion he found a cockroach in his food, on another occasion another detainee found a cockroach in his food, and that on a third occasion Plaintiff bit into a piece of paper when eating a piece of cornbread.  (Am. Compl. at 12.)

Finally, Plaintiff alleges that "the authorities" have discussed his medical condition in front of other detainees.  (Am. Compl. at 12.)  Plaintiff also states that "Defendants" handed his unsealed medical records and grievances to another detainee, and that his medical information

was then widely disseminated among the detainee population, who have bullied him and wrongly accused him of being gay. Plaintiff alleges that this conduct violates the Health Insurance Portability & Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191, 110 Stat 1936 (codified at 42 U.S.C. § 1320d notes).

In addition to Dr. Brown and Dr. O'Connor, referenced above, Plaintiff names as defendants here the United States of America and the Bureau of Immigration and Customs Enforcement ("ICE"), Department of Homeland Security ("DHS") Secretary Janet Napolitano, New Jersey DHS Field Director John Tsoukaris,[8] ICE Lieutenant Commander Chhibber,[9] Essex County Correctional Facility Medical Director Dr. Annicette,[10] Essex County Correctional Facility Warden Roy L. Hendricks,[11] ICE Program Director Anthony Perillo,[12] Detention Services Manager Donna Campbell,[13] and Nurse Practitioner Michael Ojilade.[14] Plaintiff argues

---

[8] Defendant John Tsoukaris is not alleged to have had any responsibility for Plaintiff's medical care and is not named as a defendant in the Amended Complaint. Accordingly, all claims against Mr. Tsoukaris will be dismissed without prejudice.

[9] Plaintiff alleges that Defendant Chhibber is the DHS Field Medical Director for New Jersey, with the responsibility to ensure proper medical care for ICE detainees. He states that he met with her about his complaints regarding his medical care on two occasions, in June and September 2012, and that she promised to ensure that Plaintiff received appropriate medical care, but failed to follow through with that promise. (Am. Compl. ¶ 12.)

[10] Plaintiff states that he met twice with Dr. Annicette, with the later meeting taking place in January 2013. Plaintiff states that he and Dr. Annicette discussed a plan of action regarding Plaintiff's medical care, but that the medical care did not improve. (Am. Compl. ¶ 13.)

[11] Plaintiff alleges that he advised Warden Hendricks of his complaints regarding his medical care and that Warden Hendricks advised him to file a grievance, despite being informed by Plaintiff that he had filed a couple of grievances in the past. (Am. Compl. ¶ 11.)

[12] Plaintiff states that Defendant Perillo ordered him transferred from a lower bunk to a higher bunk despite Plaintiff's attempts to explain his medical condition and prescription for a lower bunk. (Am. Compl. ¶ 16.)

[13] Plaintiff states that he complained to Defendant Campbell about the "lax" medical care he had

that the facts described in the Am. Compl. reflect violations of his equal protection, due process, and Eighth Amendment rights. Plaintiff seeks monetary damages and injunctive relief.

## II. <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a person is proceeding <u>in forma pauperis</u>, <u>see</u> 28 U.S.C. § 1915(e)(2)(B), or in which a prisoner seeks redress against a governmental employee or entity, <u>see</u> 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, <u>see</u> 28 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915 because Plaintiff is proceeding <u>in forma pauperis</u>.

According to the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not

---

received, on four occasions between April and November 2012, and that she never updated Plaintiff on her investigation of his concerns. Solely on the basis of this failure to report back, Plaintiff concludes that Defendant Campbell is responsible for medical care decisions made, by others, after November 2012. (Am. Compl. ¶ 17.)

[14] Plaintiff alleges that Nurse Practitioner Michael Ojilade is responsible for evaluating patients' medical conditions, prescribing medication, and referring patients to specialists. Plaintiff states that he met with Defendant Ojilade on November 9, 2012, when Defendant Ojilade stated that there was no problem with Plaintiff's knee. Defendant Ojilade also allegedly refused to re-order the health shakes, stating that they were costly and unnecessary. Plaintiff states further that he met with Defendant Ojilade on December 13, 2012, complaining that he had not been given a CPAP machine for his sleep apnea, in response to which Defendant Ojilade allegedly stated that Plaintiff would not receive a CPAP machine because they are costly and dangerous to have on the unit. Finally, Plaintiff alleges that, at the December 2012 meeting, Defendant Ojilade acknowledged that Plaintiff's high blood pressure could have been caused by lack of the machine. (Am. Compl. ¶ 18.)

do.'" 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive sua sponte screening for failure to state a claim[15], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMS Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting Iqbal, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

---

[15] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)); Mitchell v. Beard, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); Courteau v. United States, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). Accordingly, § 1983 applies to Plaintiff's claims against state actors Warden Roy L. Hendricks, Dr. Annicette, Dr. Brown, Dr. O'Connor, Donna Campbell, and Michael Ojilade.

## IV. BIVENS V. SIX UNKNOWN AGENTS

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages. The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228 (1979). But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988). Thus, since Carlson, the Supreme Court "has consistently refused to extend Bivens liability to any new context or new category of defendants." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001).

Relying upon Bivens, several circuit courts have implied a damages cause of action

against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial criminal detainees alleging inadequate medical care or unconstitutional conditions of confinement.  See, e.g., Lyons v. U.S. Marshals, 840 F.2d 202 (3d Cir. 1988); Magluta v. Samples, 375 F.3d 1269 (11th Cir. 2004); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980).  Accordingly, this Court concludes that Bivens governs Plaintiff's claims against the federal officials Janet Napolitano, Lieutenant Commander Chhibber, John Tsoukaris, and Anthony Perillo.

## V. ANALYSIS

As an initial matter, the Court notes that the Amended Complaint asserts a variety of claims against a number of defendants and that it often fails to identify the particular defendant(s) against whom a particular claim is asserted.  Nevertheless, from the preliminary descriptions of the parties, this Court has been able to glean the identities of the parties against which most, but not all, of the claims are asserted, and it will address each claim, separately, below.

A.    The Claims Against the United States

Plaintiff names as a defendant here the United States of America.  Also, in the text, Plaintiff expresses the intent to proceed against the Bureau of Immigration and Customs Enforcement.

The United States has sovereign immunity except where it consents to be sued.  U.S. v. Bormes, 133 S.Ct. 12, 16 (2012); United States v. Mitchell, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, Plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), cited in Anselma

11

Crossing, L.P. v. U.S. Postal Service, 637 F.3d 238, 240 (3d Cir. 2011), or against any of the individual federal officials in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., constitutes a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1); White-Squire v. U.S. Postal Service, 592 F.3d 453, 456 (3d Cir. 2010). The Federal Tort Claims Act gives a district court exclusive jurisdiction over civil actions:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, ... [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995) (quoting 28 U.S.C. § 1346(b)); see also CNA v. U.S., 535 F.3d 132, 141 (3d Cir. 2008) (quoting Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477 (1994)); United States v. Muniz, 374 U.S. 150 (1963).

Assuming that an FTCA claim would otherwise be viable, a district court nevertheless lacks jurisdiction over an FTCA claim until the claimant has exhausted administrative remedies. See McNeil v. United States, 508 U.S. 106 (1993); Deutsch, 67 F.3d at 1091.

> An action shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). See also White-Squire, 592 F.3d at 457.

Here, Plaintiff has failed to plead any facts demonstrating that he has exhausted his

administrative remedies under the FTCA. Accordingly, all claims against the United States, the Bureau of Immigration and Customs Enforcement, and against the federal officers in their official capacities, will be dismissed without prejudice.

B.     Vicarious Liability

Plaintiff has named as Defendants here several individuals who are not described as having had any personal participation in the alleged violations of Plaintiff's civil rights, including federal officials Janet Napolitano and John Tsoukaris, as well as "state actor" Warden Roy L. Hendricks. The claims against these individuals will be dismissed without prejudice for failure to state a claim.

Supervisors are not liable under § 1983 solely on a theory of respondeat superior. See Connick v. Thompson, 131 S.Ct. 1350, 1358-61 (2011); City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Similarly, supervisors in Bivens actions may not be held liable on a theory of respondeat superior. See Ashcroft v. Iqbal, 556 U.S. at 676; Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012) (citing Iqbal).

Accordingly, as the claims against them appear to be based solely on an untenable theory

13

of vicarious liability, all claims against Defendants Janet Napolitano, John Tsoukaris, and Roy L. Hendricks will be dismissed without prejudice.

C.    Equal Protection Claims

Plaintiff asserts generally that the events described in the Complaint violate his right to equal protection.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996)). Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992), quoted in Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 109 (3d Cir. 2011).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor. Village of Arlington Heights, 429 U.S. at 265-66, cited in Community Services, Inc. v. Wind Gap Mun. Authority, 421 F.3d 170, 177 (3d Cir. 2005).

Here, Plaintiff has failed to allege any facts that would suggest that he was treated differently from other persons who are similarly situated, or that any Defendant intended to

discriminate against him. Cf. Al-Shahin v. U.S. Dept. of Homeland Security, Civil Action No. 06-5261, 2007 WL 2985553, *11 (D.N.J. Oct. 4, 2007) (dismissing generalized allegation of equal protection violation asserted by alien detainee challenging conditions of confinement). Accordingly, the equal protection claim will be dismissed without prejudice.

D.    Due Process Claims

Plaintiff argues that the deprivations he alleges amount to violations of the Due Process Clauses of the Fifth and Fourteenth Amendments.[16]

Civil immigration detainees are entitled to the same due process protections as criminal pretrial detainees. See Adekoya v. Chertoff, 431 F.App'x 85, 88 (3d Cir. 2011) (citing Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000)); Contant v. Sabol, 431 F.App'x 177, 178-79 (3d Cir. 2011) (also citing Edwards, supra). Criminal pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment. See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. ...

---

[16] Because Plaintiff is a civil detainee, his claims regarding his conditions of confinement are governed by the Due Process Clauses of the Fifth Amendment (insofar as they involve federal actors) and the Fourteenth Amendment (insofar as they involve state actors), and not by the Eighth Amendment proscription against cruel and unusual punishment, which applies only to those who have been convicted and sentenced for criminal offenses. See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Accordingly, all claims asserted under the Eighth Amendment will be dismissed with prejudice.

Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. ...

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. ...

441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

Moreover, the due process rights of a pretrial detainee, to medical care, are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244-45 (1983) (citing, inter alia, Bell v. Wolfish). The Eighth Amendment proscription against cruel and unusual punishment is violated when prison officials are deliberately indifferent[17] to a prisoner's serious medical needs.[18] Estelle v.

---

[17] "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-

Gamble, 429 U.S. 97, 103-04 (1976). "Where prison authorities deny reasonable requests for medical treatment, …, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met. ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988) (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted).

A prisoner's subjective dissatisfaction with his medical care, however, does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

---

38 (1994).

[18] Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988), cited in Baker v. Younkin, Civil Action No. 13-1580, 2013 WL 3481724 (3d Cir. July 3, 2013).

Beyond these parameters, the Court of Appeals for the Third Circuit has not delineated the standard applicable to claims the denial or inadequacy of medical care violates a detainee's right to due process. See, e.g., Carson v. Mulvihill, 488 F.App'x 554, 561 (3d Cir. 2012) ("We need not resolve today which standard [Bell or Estelle] applies."); King v. County of Gloucester, 302 F.App'x 92, 95 (3d Cir. 2008) ("In assessing the denial of medical care to a pretrial detainee, … [the] inquiry involves an indirect application of the Eighth Amendment deliberate indifference standard.").

Plaintiff's contention that he is not being treated appropriately for an undescribed life-threatening medical condition, including through the provision of "health shakes," will be dismissed without prejudice for failure to state a claim. Plaintiff's characterization of his medical condition as "life-threating" is completely conclusory. Without more factual information regarding the diagnosis, specific previous prescriptions and treatment procedures, including the reasons for nutritional supplements or ongoing medical tests, Plaintiff has alleged merely a "conclusion." Instead, he must allege facts that would permit this Court to draw the inference that a constitutional violation has occurred.

Similarly, the contention that the food prepared at Essex County Jail is not sanitary or nutritious will be dismissed without prejudice. As an initial matter, Plaintiff has failed to identify a single defendant who participates in menu decisions or food preparation. In addition, the characterization of the food as non-nutritious is completely conclusory. Finally, the facts proffered in support of the characterization of the food as having been prepared in unsanitary conditions is not sufficient to raise Plaintiff's alleged right to relief above the plausible level. This claim will be dismissed without prejudice for failure to state a claim.

With respect to his challenges to the treatment for his knee injury, Plaintiff asserts only

that he seeks an alternative to the exercise regimen prescribed by a doctor who advised Plaintiff that it is the same treatment he prescribes to private patients and that decisions regarding his medical need for a lower bunk have changed over time.[19] Without more, these claims amount to nothing more than a disagreement about medical judgments, not actionable under the "deliberate indifference" standard.

Finally, Plaintiff alleges that certain defendants have refused to permit him the use of a previously-prescribed CPAP machine to treat his sleep apnea and that the failure to properly treat his sleep apnea has caused him to develop high blood pressure, which these defendants also refuse to treat. For purposes of this review, this Court will consider sleep apnea and high blood pressure to be "serious medical conditions." Plaintiff has adequately alleged that he has discussed these medical conditions with Defendants Dr. Brown, Dr. Annicette, Lieutenant Commander Chhibber, and nurse practitioner Michael Ojilade, all of whom apparently had some authority or influence with respect to treatment decisions. Accordingly, the claims regarding treatment of sleep apnea and high blood pressure may proceed as against these defendants only.

E.    HIPAA Claims

Plaintiff claims that certain defendants have violated his privacy rights under HIPAA by disclosing his confidential medical information.

Although the Court of Appeals for the Third Circuit has not addressed the question, every other federal Circuit Court to consider the matter has found that HIPAA provides neither an express nor an implied private right of action to an aggrieved patient. See, e.g., Carpenter v. Phillips, 419 F.App'x 658 (7th Cir. 2011); Dodd v. Jones, 623 F.3d 563 (8th Cir. 2010);

---

[19] Similarly, Plaintiff cannot proceed against Anthony Perillo for ordering him moved to an upper bunk, because it appears that Mr. Perillo's actions were taken in compliance with a medical decision that Plaintiff did not require a lower bunk.

Wilkerson v. Shinseki, 606 F.3d 1256 (10th Cir. 2010); Miller v. Nichols, 586 F.3d 53 (1st Cir. 2009); Webb v. Smart Document Solutions, LLC, 499 F.3d 1078 (9th Cir. 2007); Sweeney v. Department of Homeland Security, 248 F.App'x 179 (Fed. Cir. 2007); Acara v. Banks, 470 F.3d 569 (5th Cir. 2006). This Court is persuaded by the reasoning of this line of cases.[20] Plaintiff's HIPAA claim will be dismissed with prejudice for failure to state a claim.

F.    Request for Appointment of Counsel

Plaintiff has filed an Application [6], in Civil Action No. 13-0446, requesting the appointment of counsel in this matter. Again, it appears from the factual allegations that Plaintiff intended to file this Application in Civil Action No. 13-0443. To the extent he intended to file the Application in this matter, he has failed to demonstrate that appointment of counsel would be appropriate at this time.

Indigent persons raising civil rights claims have no absolute constitutional right to counsel. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law. ... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
>
> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;

---

[20] Similarly, every District Judge in this Court to consider the issue has held that HIPAA does not provide a private right of action. See Carter v. Buttonwood Hosp., Civil Action No. 12-6504, 2013 WL 211108 (D.N.J. Jan. 17, 2013); Hove v. Cleary, Civil Action No. 10-1876, 2011 WL 2223760 (D.N.J. June 6, 2011); L.S. v. Mount Olive Bd. of Educ., 765 F.Supp.2d 648 (D.N.J. 2011); Merling v. Horizon Blue Cross Blue Shield of New Jersey, Civil Action No. 04-4026, 2009 WL 2382319 (July 31, 2009).

(6) whether the plaintiff can attain and afford counsel on his own behalf.

[Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).] This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.

Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. Id. at 157.

Parham, 126 F.3d at 457-58. See also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002); Lasko v. Watts, 373 F.App'x 196, 200 (3d Cir. 2010).

In support of his Application, Plaintiff asserts that he presents complex constitutional claims, that he has been unable to locate counsel willing to represent him, and that he is indigent. These factors are not sufficient to justify appointment of counsel, in this matter, at this time.

As a preliminary matter, this Court has found that Plaintiff's allegations are sufficient to state a claim for denial of appropriate medical care for his sleep apnea and high blood pressure, but several other claims regarding his medical care and nutrition will be dismissed for failure to state a claim. Although there are deficiencies with respect to Plaintiff's presentation of the factual underpinnings for some of his claims, it is clear that Plaintiff is intelligent and articulate. He will be granted leave to file an amended complaint addressing the deficiencies of his claims, as delineated herein. Accordingly, there is no reason to conclude, at this time, that Plaintiff will not be able to appropriately set forth his claims. Therefore, the Application for appointment of counsel will be denied, without prejudice to Plaintiff or this Court revisiting the issue should circumstances later warrant.

## VI. CONCLUSION

For the reasons set forth above, the Fifth and Fourteenth Amendment claims for denial of appropriate medical care with respect to Plaintiff's sleep apnea and high blood pressure will be

permitted to proceed as against Defendants Dr. Brown, Dr. Annicette, Lieutenant Commander Chhibber, and nurse practitioner Michael Ojilade. All due process, equal protection, and cruel and unusual punishment claims arising out of allegedly sexually offensive and frightening graffiti in Plaintiff's cell, an incident in which a correctional officer shoved him during a fire drill, and verbal harassment and obscene gestures by other correctional officers will be dismissed as duplicative of claims asserted in Civil Action No. 13-0443. All claims against the United States, the Bureau of Immigration and Customs Enforcement, and federal officials Janet Napolitano, John Tsoukaris, Lieutenant Commander Chhibber, and Anthony Perillo, in their official capacities, will be dismissed with prejudice. All claims asserted under the Eighth Amendment and HIPAA will be dismissed with prejudice for failure to state a claim. All remaining claims will be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies in his pleadings with respect to the claims dismissed without prejudice, the Court will grant Plaintiff leave to file an application to amend accompanied by a proposed second amended complaint, addressing the deficiencies of his medical-care and nutrition claims, only.[21]

An appropriate order follows.

Dennis M. Cavanaugh
United States District Judge

Dated: Apr 25, 2013

---

[21] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. See West Run Student Housing Associates, LLC v. Huntington National Bank, No. 12-2430, 2013 WL 1338986, *5 (3d Cir. April 4, 2013) (collecting cases). See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. Id.